Filed 7/29/26  P. v. Hunter CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DERRICK HUNTER,<br><br>      Defendant and Appellant. | A172345<br><br>(San Francisco City & County<br>Super. Ct. No. CRI-23005706) |

Derrick Hunter (appellant) appeals following his convictions for multiple firearms charges and additional offenses.  We affirm.

BACKGROUND

The following evidence was presented at trial.[1]  In April 2023, appellant resisted police officers when they attempted to detain him on an unrelated allegation.  During the incident, appellant removed a firearm from his waistband and threw it over his head.  Officers recovered a semiautomatic handgun, a large-capacity magazine, and loose ammunition.  Law enforcement records indicated the firearm was registered to someone other than appellant and had been either lost or misplaced by the owner.

---

[1] We recite only the evidence relevant to the issues on appeal.

1

The jury found appellant guilty of possession of a firearm as a prohibited person under the age of 30 (Pen. Code, § 29820, subd. (b); count 1);[2] carrying a loaded firearm in public (§ 25850, subd. (a); count 2); possession of a large-capacity magazine (§ 32310; count 3); possession of ammunition as a prohibited person (§ 30305, subd. (a)(1); count 4); carrying a concealed firearm (§ 25400, subd. (a)(2); count 5); and two counts of resisting a peace officer (§ 148, subd. (a)(1); counts 6 & 7). The jury also found true allegations, as to counts 2 and 5, that appellant was not in lawful possession of the firearm (§§ 25400, subd. (c)(4), 25850, subd. (c)(4)).

The trial court imposed the two-year midterm on count 1, suspended execution of sentence, and placed appellant on probation for two years with various terms and conditions. The sentences imposed on the remaining counts were either stayed or ordered to run concurrent with count 1.

DISCUSSION

I.    *Qualifying Prior Juvenile Adjudication (Counts 1, 4)*

Appellant argues his convictions under section 29820 (count 1) and section 30305 (count 4) should be reversed because no substantial evidence supports the finding that he suffered a qualifying prior juvenile adjudication as required by those statutes, and the jury instructions on the issue were erroneous. We reject the challenge.

A.    *Legal Background*

As relevant here, section 29820 prohibits the possession of firearms by a person under the age of 30 who was adjudged a ward of a juvenile court because of the commission of "an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§ 29820, subds. (a)(1)(A), (a)(2),

---

[2] All undesignated statutory references are to the Penal Code.

2

(b).)  Section 30305 prohibits the possession of ammunition by a person who is prohibited from possessing a firearm under section 29820.  (§ 30305, subd. (a)(1).)

Welfare and Institutions Code section 707, subdivision (b) offenses include "[a]ssault by any means of force likely to produce great bodily injury." (Welf. & Inst. Code, § 707, subd. (b)(14).)  As discussed further below, the evidence at trial was that appellant's 2011 juvenile wardship was for a violation of section "245(a)(1)" which, at that time, penalized "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury . . . ." (Stats. 2004, ch. 494, § 1.)

B.     *Additional Factual Background*

Before trial, appellant filed a motion in limine regarding his juvenile wardship, arguing "[t]he *nature* of the prior juvenile convictions are unduly prejudicial and not probative of any relevant fact at issue" and requesting "the court sanitize the prior convictions . . . to exclude the nature of the prior convictions, while still allowing the jury to hear of the fact that [appellant] was previously convicted of a felony as a juvenile."  At a hearing on the motion, defense counsel argued, "the charge itself, the 245(a)(1), I do think is prejudicial in a gun case.  It's a crime of violence."  The court granted the motion in part, ruling that it would "allow the assault adjudication from the juvenile court to come in" but would "not allow the People . . . to present any information regarding . . . what kind of assault it was -- whether it was an assault with force likely to produce great bodily injury or whether it was an assault with a deadly weapon."

A discussion about how the People would present evidence of the juvenile adjudication took place at a subsequent hearing.  The prosecutor

3

indicated his intent to submit appellant's "CI&I" to "demonstrate[] the fact of that juvenile adjudication." (See Cal. Code Regs., tit. 15, § 3000 ["Criminal Identification and Investigation (CI&I) Report means the report defined by Penal Code section 11105, commonly referred to as 'Rap Sheet' "].) Defense counsel stated that appellant's rap sheet indicated "245(a)(1), wardship felony, PC *force assault*. It says ADW, assault with a deadly weapon not firearm. *GBI [great bodily injury] likely*." (Italics added.) After further discussion, the court ruled, "Generally, a certified CI&I is admissible under [Evidence Code section] 1280. The CI&I . . . will be redacted just to show an assault 245 charge. I will take out the assault with a deadly weapon not a firearm and *great bodily injury*. So it will just reflect assault." (Italics added.)

At trial, the People presented a redacted rap sheet indicating that, in 2011, appellant had been adjudged a ward of the juvenile court because of his commission of a violation of section "245(A)(1)." The People also submitted a juvenile court minute order documenting appellant's admission to "245(a)(1)."

During discussions over proposed jury instructions, the prosecutor noted that the relevant statutes "reference[] assault with force likely to cause GBI [great bodily injury] as the qualifying charge that would trigger the restriction. And here, *that's the charge that [appellant] pled to*." (Italics added.) Later in the discussion, defense counsel noted, "I do recall the Court ruling that the description of the (a)(1) is to be assault, *not assault with force likely to cause great bodily injury*," and stated that therefore, on the instructions, "My understanding is it should be described as an assault." (Italics added.) The jury was instructed that the elements for a violation of section 29820, subdivision (b) included, "[t]he defendant had a juvenile court

4

finding for assault, 245(a)(1)." The same instruction was provided for section 30305, subdivision (a).

C.    *Analysis*

The parties dispute whether a juvenile wardship for an unspecified violation of former section 245, subdivision (a)(1)—"an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury"—constitutes evidence of a wardship for "[a]ssault by any means of force likely to produce great bodily injury" (Welf. & Inst. Code, § 707, subd. (b)(14)).  Appellant argues it does not because an assault with a deadly weapon other than a firearm is not equivalent to an assault by means of force likely to produce great bodily injury.  We need not decide this issue.

The People argue, in the alternative, that appellant should be judicially estopped from raising this claim on appeal.  " ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.  [Citations.]  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.  [Citation.]  Application of the doctrine is discretionary.' " [Citation.]  The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*People v. Castillo* (2010) 49 Cal.4th 145, 155, italics omitted.)

Each of these elements is established here: (1) Appellant argued below that the nature of the assault offense was not relevant to any issue, but

5

argues on appeal that it is in fact critical to whether his juvenile adjudication was a qualifying one for counts 1 and 4; (2) the positions were both taken in judicial proceedings; (3) appellant's successful argument in the trial court resulted in a court order redacting any additional information about the juvenile offense other than that it was for "245(a)(1)"; (4) the two positions are wholly inconsistent; and (5) there is no indication that appellant's trial court position was taken as a result of ignorance, fraud, or mistake. We note that, while appellant's unredacted rap sheet is not part of the record on appeal, multiple comments made by the attorneys and trial court as set forth above indicate that appellant's juvenile adjudication was, at least in part, for an assault by means of force likely to produce great bodily injury.

Appellant's reply brief does not dispute that the elements of judicial estoppel are satisfied or that applying the doctrine would be an appropriate exercise of our discretion (indeed, appellant does not even mention the People's judicial estoppel argument). We agree with the People that judicial estoppel is appropriate to preclude appellant's argument that his juvenile adjudication for "245(a)(1)" is insufficient to establish, as a matter of fact or law, that he suffered a qualifying juvenile adjudication for counts 1 and 4.

II.  *Felony Sentences (Counts 2, 5)*

The jury found appellant guilty of misdemeanor carrying a loaded firearm in public (§ 25850, subd. (a); count 2) and misdemeanor carrying a concealed firearm (§ 25400, subd. (a)(2); count 5). The trial court sentenced appellant on each of these counts to felony two-year prison terms (stayed under section 654). Appellant argues these felony sentences are unauthorized because the convictions were for misdemeanor offenses.

As the People argue, these statutes provide for punishment as a felony under certain circumstances, including when the person "is not in lawful

6

possession of the firearm." (§§ 25850, subd. (c)(4), 25400, subd. (c)(4).) The jury found true allegations that appellant was not in lawful possession of the firearm with respect to counts 2 and 5. Accordingly, the trial court properly imposed felony sentences on these counts.

III.    *Large-Capacity Magazine Ban (Count 3)*

Appellant argues his conviction for violating the statute prohibiting possession of a large-capacity magazine (§ 32310; count 3) should be reversed because the statute is unconstitutional under the Second Amendment to the United States Constitution. We reject the claim.

As an initial matter, appellant does not dispute that he failed to raise the claim below. In response to the People's forfeiture argument, appellant asserts he is raising only a facial challenge presenting a pure question of law. (See *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1471, fn. 5 ["we may consider for the first time on appeal a pure question of law which is presented by undisputed facts"].) With this understanding, we consider appellant's claim.

"A magazine is a device that automatically feeds ammunition into a firearm whenever the shooter fires a bullet. Although some magazines are permanently affixed to a firearm, most magazines are detachable." (*Duncan v. Bonta* (9th Cir. 2025) 133 F.4th 852, 861 (*Duncan*).) For purposes of section 32310, " 'large-capacity magazine' means any ammunition feeding device with the capacity to accept more than 10 rounds," with certain exceptions. (§ 16740.) Under such a definition, a large-capacity magazine "enables a shooter to fire more than ten bullets rapidly and without reloading." (*Duncan*, at p. 862.) Second Amendment challenges to California's ban on possessing large-capacity magazines have recently been rejected by both the Ninth Circuit and another division of this court.

7

(*Duncan*, at pp. 864–884; *People v. McCowan* (2026) 117 Cal.App.5th 1071, 1096–1099 (*McCowan*).)

In analyzing Second Amendment challenges, courts first "determine whether 'the Second Amendment's plain text covers an individual's conduct.' " (*McCowan, supra,* 117 Cal.App.5th at p. 1082.) If so, " '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.' " (*Ibid.*) *Duncan* and *McCowan* both found the Second Amendment's plain text did not cover the possession of large-capacity magazines. *Duncan* reasoned, "the Founders protected the right to keep and bear 'Arms,' not a right to keep and bear 'Arms and Accoutrements,' a common expression at the time of the Founding. Large-capacity magazines are optional accessories to firearms, and firearms operate as intended without a large-capacity magazine. A large-capacity magazine is thus an accessory or accoutrement, not an 'Arm' in itself. Possession of a large-capacity magazine therefore falls outside the text of the Second Amendment." (*Duncan, supra,* 133 F.4th at p. 860.) *McCowan* reasoned that, while many cases considering challenges to large-capacity magazine bans based their conclusions on whether such magazines "were necessary to operate the firearm," the challenger in *McCowan* "has not presented any evidence regarding whether magazines constitute a functional component of firearms or whether they are necessary to operate those firearms as intended. He instead relies on the conclusions in the *Duncan* dissent. We decline to rely on the factual conclusions in that case absent evidence in the record before us to support those conclusions." (*McCowan*, at p. 1098.)

Both cases also held that, even if large-capacity magazines were covered by the Second Amendment, California's ban was consistent with

8

historical regulation. *Duncan* relied on "the Nation's traditions of protecting innocent persons by prohibiting especially dangerous uses of weapons and by regulating components necessary to the firing of a firearm" and held that, "[l]ike those historical laws, California's law restricts an especially dangerous feature of semi-automatic firearms—the ability to use a large-capacity magazine—while allowing all other uses of those firearms. . . . By prohibiting only an especially dangerous use of a modern weapon, the law 'comport[s] with the principles underlying the Second Amendment.' " (*Duncan, supra,* 133 F.4th at p. 860.) *McCowen* cited multiple cases which "concluded that large-capacity magazines are not 'typically possessed by law-abiding citizens for lawful purposes,' " and found the challenger in *McCowan* "has not demonstrated otherwise. Again, he relies on facts outside the record by citing the *Duncan* dissent and various news articles and surveys regarding the popularity of large-capacity magazines and their common uses. Accordingly, his facial challenge to section 32310 fails." (*McCowan, supra,* 117 Cal.App.5th at pp. 1098–1099.)

Like the challenger in *McCowan*, appellant points to no record evidence indicating a contrary result as to either step of the above analysis, and instead relies on a dissent in *Duncan* and secondary sources such as law review articles and news stories. These are not cognizable evidence for purposes of this unpreserved facial challenge. (See *McCowan, supra,* 117 Cal.App.5th at pp. 1098–1099; see also *People v. Crenshaw* (2025) 116 Cal.App.5th 1169, 1178–1179 [in Second Amendment challenge to assault weapons, the appellant's "reliance on general assertions about AR-type rifles from law review articles and federal authorities emphasizes the lack of relevant facts in the record. [The challenger's] claim requires the development of a more robust factual record. . . . This is not an inquiry that

turns on the review of abstract and generalized legal concepts; thus, we are not well suited to address this constitutional challenge on appeal for the first time."].)  Appellant's challenge fails.

DISPOSITION

The judgment is affirmed.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

(A172345)